ORIGINAL

# United States Court of Federal Claims

FILED
SEP 8 2005
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Scott & White Health Plan, *Plaintiff,* <br> *v.* <br> United States, *Defendant.* | No. 05-963C <br> Judge Horn |

## Amended Complaint

Scott & White Health Plan, a Texas corporation, alleges upon information and belief as follows:

### Statement of Related Case

1. This case poses the same legal issue as *Texas Health Choice, L.C. v. United States*, No. 05-371C, which is pending before Judge Horn.

### Nature of the Action

2. This action was transferred to this Court from the United States District Court for District of Columbia.

3. Plaintiff's action seeks a declaratory judgment under 28 U.S.C. § 2201 with respect to a federal regulation, 48 C.F.R § 1652.216-70(b)(6), that conflicts with the Federal

Employees Health Benefits Act, 5 U.S.C. §§ 8901 *et seq.*, either on its face or as applied to Plaintiff in this case.

4. Plaintiff's action also seeks a judgment under the Contract Disputes Act, 41 U.S.C. § 609(a)(1), of $3,625,782 plus interest for a claim under an express contract with the government of the United States of America, acting by and through the United States Office of Personnel Management.

**The Parties**

5. Plaintiff Scott & White Health Care ("Scott & White") is a corporation organized under the laws of Texas, with its headquarters Temple, Texas. Scott & White is licensed as an health maintenance organization in Texas. Scott & White provided health care benefits to individuals in Texas.

6. Defendant is the United States (the "Government"), acting by and through the United States Office of Personnel Management ("OPM"), an agency of the United States with its headquarters in Washington, D.C. OPM is the federal contracting agency responsible for administration of the Federal Employees Health Benefits Program under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 *et seq.*

**Jurisdiction**

7. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 8912, 28 U.S.C. § 1491(a)(1), the order of the United States District Court for the District of Columbia

is *Scott & White Health Plan v. Office of Personnel Management*, No. 01-1824 (D.D.C. Mar. 31, 2005), and the decision of the United States Court of Appeals for the Federal Circuit in *Texas Health Choice, L.C. v. Officer of Personnel Management*, 400 F.3d 895 (Fed. Cir. 2005).

8. As set forth below, Scott & White filed a certified claim with the OPM contracting officer on October 10, 2000. The OPM contracting officer did not issue a final decision on Scott & White's certified claim.

**Factual and Legal Background**

***The Federal Employees Health Benefits Program***

9. Scott & White entered into a contract (the "Contract") with the Government to provide health benefits to federal employees in Texas.

10. The Contract was part of the Federal Employees Health Benefits Program (the "Program"), and the Contract is enforceable under FEHBA.

11. A contractor under the Program provides health care benefits to enrolled federal employees and is compensated by the Government.

12. FEHBA requires that rates charged by contractors and paid by the Government "shall reasonably and equitably reflect the cost of the benefits provided." 5 U.S.C. § 8902(*i*).

***Interim Compensation Rates***

13. OPM administers the Program.

14. OPM annually negotiates with each contractor the compensation rates and benefits for the next contract year, which begins January 1 of the next calendar year. The process begins each May, when contractors propose to OPM interim compensation rates for the upcoming contract year. The interim compensation rates represent the contractors' estimates of what the contractors will charge similarly sized subscriber groups ("comparison groups") during the upcoming calendar year.

15. Once the interim rate proposals are approved, OPM compensates its contractors at the interim compensation rates during the contract year.

*The Reconciliation Process*

16. Beginning in April of the contract year, contractors and OPM engage in a process to reconcile the interim compensation rates (which were estimates) with the rates the contractor is actually charging a comparison group.

17. At the conclusion of the reconciliation process, one of two things happen: If it is determined that the interim compensation rates were higher than the rates actually charged to the comparison group, the contractor pays the Government the difference. On the other hand, if it is determined that the interim compensation rates were lower than the rates actually charged to the comparison group, the Government pays the contractor the difference.

*The Last Year of the Contract*

18. The exception to this general rule occurs when the contract is not renewed. In that case, neither party is paid the difference between the interim compensation rates and the rates actually charged to the comparison group. This result is purportedly required by 48 C.F.R § 1652.216-70, which requires that the following clause be included in all Program contracts:

> In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates.

48 C.F.R § 1652.216-70(b)(6).

19. The principal rationale for 48 C.F.R § 1652.216-70(b)(6) is that "it is difficult to get adequate data from plans when they have terminated." 55 Fed. Reg. 27406 (1996).

*Scott & White's Relationship with OPM*

20. The clause quoted in paragraph 16 appears in Scott & White's Contract with the Government at Section 3.2(b)(6).

21. In July 1999, OPM's Office of the Actuary informed Scott & White of the exact amount owed to Scott & White from the 1999 rate reconciliation process. It stated: "The result of this reconciliation . . . is that your plan is due $5,461,752. Due to an unresolved audit issue, OPM will not be making a contingency reserve payment to you for this amount."

22. Of the $5,461,752 owed by the Government to Scott & White, the sum of $3,625,782 resulted from the 1999 rate reconciliation process.

23. In October 1999, Scott & White gave OPM written notice of nonrenewal of the Contract.

24. OPM refused to pay Scott & White the $3,625,782 due from the 1999 rate reconciliation. It relied on Section 3.2(b)(6) of the Contract, the clause required by the regulation at 48 C.F.R § 1652-216-70(b)(6).

25. By letter dated October 10, 2000, Scott & White filed a certified claim with the OPM Contracting Officer demanding payment of the $3,625,782.

26. OPM did not respond to Scott & White's October 10, 2000 letter.

**Claims for Relief**

***The Regulation Is Invalid On Its Face***

27. FEHBA states that compensation rates charged by contractors and paid by the Government under the Act "shall reasonably and equitably reflect the cost of the benefits provided." 5 U.S.C. § 8902(*i*).

28. OPM has determined that a contractor is compensated at rates that "reasonably and equitably reflect the cost of the benefits provided" when compensation rates paid by the Government are calculated in the same way as the compensation rates paid to the comparison group. *See* 48 C.F.R §1652.216-70.

29. Program contracts are required by 48 C.F.R § 1652.216-70(b)(6) to include the following clause: "In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates."

30. The result of including this clause in Program contracts is that, during the last year of a contractor's participation, the compensation rates paid by the Government are not calculated in the same way as those paid to the comparison group. The Government either overpays or underpays the contractor. In either event, the compensation rates paid to the contractor do not "reasonably and equitably reflect the cost of the benefits provided," as required by 5 U.S.C. § 8902(*i*).

31. The regulation at 48 C.F.R § 1652.216-70(b)(6) thus conflicts with 5 U.S.C. § 8902(*i*) and is invalid as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

32. By reason of the foregoing, Scott & White is entitled to a declaratory judgment that 48 C.F.R § 1652.216-70(b)(6) is invalid on its face.

***The Regulation Is Invalid As Applied In This Case***

33. The principal rationale for 48 C.F.R § 1652.216-70(b)(6) is that "it is difficult to get adequate data from plans when they have terminated." 55 Fed. Reg. 27406 (1996).

34. It is not "difficult" to obtain "adequate data" about the amount owed to Scott & White in this case because OPM has already calculated that amount with precision: $3,625,782. Moreover, this amount was calculated by OPM before Scott & White informed the Government of its intention not to renew.

35. Additionally, contractors' record retention obligations and the Government's audit rights survive the termination of the contract.

36. The only other rationale for 48 C.F.R § 1652.216-70(b)(6) is that "in the event a plan goes out of business, there are no rates to reconcile." *Id.*

37. Scott & White has not gone out of business.

38. By reason of the foregoing, Scott & White is entitled to a declaratory judgment that 48 C.F.R § 1652.216-70(b)(6) is invalid as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law as applied to Scott & White in this case.

**Requested Relief**

WHEREFORE, Scott & White prays for a judgment as follows:

1. That this Court declare that 48 C.F.R § 1652.216-70(b)(6) is:

(a) contrary to 5 U.S.C. § 8902(*i*), arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and invalid on its face; and/or

(b) contrary to 5 U.S.C. § 8902(*i*), arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and invalid as applied to Scott & White in this case.

2. That this Court modify the Contract to remove the invalid clause required by 48 C.F.R § 1652.216-70(b)(6).

3. That this Court order, pursuant to 28 U.S.C. § 2202, 5 U.S.C. 8902(*i*), and 5 U.S.C. § 8902, that the United States pay Scott & White $3,625,782, the amount that the Government determined it owed during the 1999 reconciliation but refused to pay pursuant to 48 C.F.R. § 1652.216-70(b)(6).

4. That this Court award Scott & White interest, costs, and other such relief as it deems just and proper.

Respectfully submitted,

Joel L. Michaels
Michael S. Nadel ATTORNEY OF RECORD
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 756-8000

*Attorneys for Plaintiff*
*Scott & White Health Plan*