earliest possible date after an individual required to certify begins employment or association with the contractor. If a contractor decides to rely on a certification executed prior to the suspension of section 27 (i.e., prior to December 1, 1989), the Contractor shall ensure that an individual who has so certified is notified that section 27 has been reinstated. These certifications shall be maintained by the Contractor for a period of 6 years from the date a certifying employee's employment with the company ends or, for an agency, representative, or consultant, 6 years from the date such individual ceases to act on behalf of the contractor.

(e) The certification required by paragraph (c) of this clause is a material representation of fact upon which reliance will be placed in executing this modification.

SECTION 5.47
PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED OR PROPOSED FOR DEBARMENT (AUG 1995) (FAR 52.209-6)

(a) The Government suspends or debars Contractors to protect the Government's interests. The Contractor shall not enter into any subcontract in excess of $25,000 with a Contractor that is debarred, suspended, or proposed for debarment unless there is a compelling reason to do so.

(b) The Contractor shall require each proposed first-tier subcontractor, whose subcontract will exceed $25,000, to disclose to the Contractor, in writing, whether as of the time of award of the subcontract, the subcontractor, or its principals, is or is not debarred, suspended, or proposed for debarment by the Federal Government.

(c) A corporate officer or a designee of the Contractor shall notify the Contracting Officer, in writing, before entering into a subcontract with a party that is debarred, suspended, or proposed for debarment (see FAR 9.404 for information on the List of Parties Excluded From Federal Procurement and Non-procurement Programs). The notice must include the following:

(1) The name of the subcontractor.

(2) The Contractor's knowledge of the reasons for the subcontractor being on the List of Parties Excluded From Federal Procurement and Nonprocurement Programs.

(3) The compelling reason(s) for doing business with the subcontractor notwithstanding its inclusion on the List of Parties Excluded From Federal Procurement and Nonprocurement Programs.

(4) The systems and procedures the Contractor has established to ensure that it is fully protecting the Government's interests when dealing with such subcontractor in view of the specific basis for the party's debarment, suspension, or proposed debarment.

SECTION 5.48
BANKRUPTCY (JUL 1995) (FAR 52.242-13)

In the event the Contractor enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the Contractor agrees to furnish, by certified mail or electronic commerce method authorized by the contract, written notification of the bankruptcy to the Contracting Office responsible for administering the contract. This notification shall be furnished within five days of the initiation of the proceedings relating to bankruptcy filing. This notification shall include the date on which the bankruptcy petition was filed, the identity of the court in which the bankruptcy petition was filed, and a listing of Government contract numbers and contracting offices for all Government contracts against which final payment has not been made. This obligation remains in effect until final payment under this contract.

SECTION 5.49
TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984) (FAR 52.242-13)

(a) The Government may terminate performance of work under this contract in

whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a Notice of Termination specifying the extent of terminating and the effective date.

(b) After receipt of a Notice of Termination, and except as directed by the Contracting Officer, the Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this clause:

(1) Stop work as specified in the notice.

(2) Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.

(3) Terminate all subcontracts to the extent they relate to the work terminated.

(4) Assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Contractor under the subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(5) With approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause.

(6) As directed by the Contracting Officer, transfer title and deliver to the Government (i) the fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced or acquired for the work terminated, and (ii) the completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would be required to be furnished to the Government.

(7) Complete performance of the work not terminated.

(8) Take any action that may be necessary, or that the Contracting Officer may direct, for the protection and preservation of the property related to this contract that is in the possession of the contractor and in which the Government has or may acquire an interest.

(9) Use its best efforts to sell, as directed or authorized by the Contracting Officer, any property of the types referred to in subparagraph (6) above; provided, however, that the Contractor (i) is not required to extend credit to any purchaser and (ii) may acquire the property under the conditions prescribed by, and at prices approved by, the Contracting Officer. The proceeds of any transfer or disposition will be applied to reduce any payments to be made by the Government under this contract, credited to the price or cost of the work, or paid in any other manner directed by the Contracting Officer.

(c) After expiration of the plant clearance period as defined in subpart 45.6 of the Federal Acquisition Regulation, the Contractor may submit to the Contracting Officer a list, certified as to quantity and quality, or termination inventory not previously disposed of, excluding items authorized for disposition by the Contracting Officer. The Contractor may request the Government to remove those items or enter into an agreement for their storage. Within 15 days, the Government will accept title to those items and remove them or enter into a storage agreement. The Contracting Officer may verify the list upon removal of the items, or if stored, within 45 days from submission of the list, and shall correct the list, as necessary, before final settlement.

(d) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer. The Contractor shall submit the proposal promptly, but no later than 1 year from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 1-year period. However, if the Contracting Officer determines that the facts justify it, a termination settlement proposal may be received and acted on after 1 year or any extension. If the Contractor fails to submit the proposal within the time allowed, the

Contracting Officer may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined.

(e) Subject to paragraph (d) above, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (e) or paragraph (f) below, exclusive of costs shown in subparagraph (f)(3) below, may not exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the contract price of work not terminated. The contract shall be amended, and the Contractor paid the agreed amount. Paragraph (f) below shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

(f) If the Contractor and the Contracting Officer fail to agree on the whole amount to be paid because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined by the Contracting Officer as follows, but without duplication of any amounts agreed on under paragraph (e) above:

(1) The contract price for completed supplies or services accepted by the Government (or sold or acquired under subparagraph (b)(9) above) not previously paid for, adjusted for any saving of freight and other charges.

(2) The total of--

(i) The costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto, but excluding any costs attributable to supplies or services paid or to be paid under paragraph (f)(1) above;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (i) above; and

(iii) A sum, as profit on subdivision (i) above, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(3) The reasonable costs of settlement of the work terminated, including--

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

(g) Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (f) above, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(h) The cost principles and procedures of part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(i) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (d), (f), or (k), except that if the Contractor failed to submit the termination settlement proposal within the time provided in paragraph (d) or (k), and failed to request a time extension, there is no right of appeal. If the Contracting Officer has made a determination of the amount due under paragraph (d), (f) or (k), the Government shall pay the Contractor (1) the amount determined

by the Contracting Officer if there is no right of appeal or if no timely appeal has been taken, or (2) the amount finally determined on an appeal.

(j) In arriving at the amount due the Contractor under this clause, there shall be deducted--

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(k) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(l) (1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App. 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not he charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstance.

(m) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

SECTION 5.50
DEFAULT (Fixed-Price Supply and Service) (APR 1984) (FAR 52.249-8)

(a) (1) The Government may, subject to paragraphs (c) and (d) below, by written notice of default to the Contractor, terminate this contract in whole or in part if the Contractor fails to--

(i) Deliver the supplies or to perform the services within the time specified in this contract or any extension;

(ii) Make progress, so as to endanger performance of this contract (but see subparagraph (a)(2) below); or

(iii) Perform any of the other provisions of this contract (but see subparagraph (a)(2) below).

(2) The Government's right to terminate this contract under subdivisions (1)(ii) and (1)(iii) above, may be exercised if the Contractor does not cure such failure within 10 days (or more if authorized in writing by the Contracting Officer) after receipt of the notice from the Contracting Officer specifying the failure.

(b) If the Government terminates this contract in whole or in part, it may acquire, under the terms and in the manner the Con-

tracting Officer considers appropriate, supplies or service similar to those terminated, and the Contractor will be liable to the Government for any excess costs for those supplies or services. However, the Contractor shall continue the work not terminated.

(c) Except for defaults of subcontractors at any tier, the Contractor shall not be liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (1) acts of God or of the public enemy, (2) acts of the Government in either its sovereign or contractual capacity, (3) fires, (4) floods, (5) epidemics, (6) quarantine restrictions, (7) strikes, (8) freight embargoes, and (9) unusually severe weather. In each instance the failure to perform must be beyond the control and without the fault or negligence of the Contractor.

(d) If the failure to perform is caused by the default of a subcontractor at any tier, and if the cause of the default is beyond the control of both the Contractor and subcontractor, and without the fault or negligence of either, the Contractor shall not be liable for any excess costs for failure to perform, unless the subcontracted supplies or services were obtainable from other sources in sufficient time for the Contractor to meet the required delivery schedule.

(e) If this contract is terminated for default, the Government may require the Contractor to transfer title and deliver to the Government, as directed by the Contracting Officer, any (1) completed supplies, and (2) partially completed supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (collectively referred to as *manufacturing materials* in this clause) that the Contractor has specifically produced or acquired for the terminated portion of this contract. Upon direction of the Contracting Officer, the Contractor shall also protect and preserve property in its possession in which the Government has an interest.

(f) The Government shall pay contract price for completed supplies delivered and accepted. The Contractor and Contracting Officer shall agree on the amount of payment for manufacturing materials delivered and accepted and for the protection and preservation of the property. Failure to agree will be a dispute under the Disputes clause. The Government may withhold from these amounts any sum the Contracting Officer determines to be necessary to protect the Government against loss because of outstanding liens or claims of former lien holders.

(g) If, after termination, it is determined that the Contractor was not in default, or that the default was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government.

(h) The rights and remedies of the Government in this clause are in addition to any other rights and remedies provided by law or under this contract.

SECTION 5.51
[RESERVED]

SECTION 5.52
REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS OTHER THAN PENSIONS (PRB) (FEB 1995) (FAR 52.215-39)

The Contractor shall promptly notify the Contracting Officer in writing when it determines that it will terminate or reduce a PRB plan. If PRB fund assets revert, or inure, to the Contractor or are constructively received by it under a plan termination or otherwise, the Contractor shall make a refund or give a credit to the Government for its equitable share as required by FAR 31.205-6(o)(6). The Contractor shall include the substance of this clause in all subcontracts under this contract which meet the applicability requirements of FAR 15.804-8(f). The resulting adjustment to prior years' PRB costs will be determined and applied in accordance with FAR 31.205-6(o).

SECTION 5.53
NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (APR 1984) (FAR 52.222-1)

(a) If the Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor shall immediately give notice, including all relevant information, to the Contracting Officer.

(b) The Contractor agrees to insert the substance of this clause, including this paragraph (b), in any subcontract to which a labor dispute may delay the timely performance of this contract; except that each subcontract shall provide that in the event its timely performance is delayed or threatened by delay by any actual or potential labor dispute, the subcontractor shall immediately notify the next higher tier subcontractor or the prime Contractor, as the case may be, of all relevant information concerning the dispute.

SECTION 5.54
[RESERVED]

# FEDERAL EMPLOYEES HEALTH BENEFITS PROGRAM

*STANDARD CONTRACT*

*AMENDMENT*

*FOR*

*COMMUNITY-RATED COMPREHENSIVE MEDICAL PLAN CARRIERS*

# 1997

# CONTRACT FOR FEDERAL EMPLOYEES HEALTH BENEFITS

CONTRACT NO: CS1929
EFFECTIVE: January 1, 1983

AMENDMENT NO: 1997
EFFECTIVE: January 1, 1997

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*hereinafter called the OPM, the Agency, or the Government*

AND

CONTRACTOR: SCOTT AND WHITE HEALTH PLAN
*hereinafter also called the Carrier.*

Address: 2401 S 31st Street
Temple, TX 76508

In consideration of payment by the Agency of subscription charges set forth in Appendix B, the Carrier agrees to perform all of the services set forth in this contract.

FOR THE CARRIER

Deny Radefeld
Name of Signer *(Type or print)*

Executive Director
Title of Signer

x Deny Radefeld
Signature of Person
Authorized to Execute Contract

11/20/96
Date Signed

FOR THE GOVERNMENT

David A. Lewis
Name of Contracting Officer *(Type or print)*

Chief, Insurance Contracts Division IV
Title of Contracting Officer

David A. Lewis
Signature of Contracting Officer

11/25/96
Date Signed

1. All references to the 1996 contract year are changed to 1997.

2. The Table of Contents is amended, as follows:

1.16 [RESERVED]

3.6 DISCREPANCIES BETWEEN ENROLLMENT AND PAYMENTS TO CARRIER

5.14 UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS

5.31 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING STANDARDS
5.32 ADMINISTRATION OF COST ACCOUNTING STANDARDS

5.50 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE)

5.55 EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA
5.56 AUTHORIZATION AND CONSENT
5.57 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT
5.58 MANDATORY INFORMATION FOR ELECTRONIC FUNDS TRANSFER PAYMENT
5.59 CERTIFICATION OF NONSEGREGATED FACILITIES

*PART VI – APPENDICES*

A- BROCHURE TEXT

3. Section 1.1, DEFINITIONS OF FEHB TERMS, is amended to JAN 1997 and amended by adding the following:

Subcontractor: Any supplier, distributor, vendor, or firm that furnishes supplies or services to or for a prime contractor, except for providers of direct medical services or supplies pursuant to the Carrier's health benefits plan.

4. Section 1.5, RECORDS AND INFORMATION TO BE FURNISHED BY OPM, is amended to JAN 1997 and paragraphs (b) and (c) are amended as follows:

(b) The OPM shall direct the agencies to provide the Carrier, not less often than quarterly, the names of Enrollees enrolled under the contract by payroll office and the premium paid for those Enrollees for the current pay cycle. The Carrier shall at least quarterly reconcile its enrollment records with those provided by the Government.

(c) Neither clerical error (whether by the OPM, by any other Government agency, or by the Carrier) in keeping any records pertaining to coverage under this contract, nor delays in making entries thereon, nor failure to make or account for any deduction of enrollment charges, shall invalidate coverage otherwise validly in force or continue coverage otherwise validly terminated. If any relevant facts pertaining to any individual to whom coverage under this contract relates shall be found to have been misstated, and if such misstatement affects the existence or the amount or extent of coverage, the true facts shall be used in determining whether coverage is in force under the terms of this contract.

5. Section 1.9, FEHB QUALITY ASSURANCE, is amended to JAN 1997 and is amended as follows:

(a)

* * *

(8) Assessing Quality of Health Care. The Carrier agrees to collect data on the condition-specific patient outcomes endorsed by the Foundation for Accountability (FAcct), as requested by the OPM, and provide statistical reports, in accordance with FAcct guidelines when the data is reasonably available. For Contract Year 1997, the Carrier may be asked to collect data on one or more, but not more than three, outcomes on a pilot basis in a specified geographic locality. Depending on the experience during Contract Year 1997, such data collection may be expanded in future contract years.

(b) The Carrier shall conduct a program to assess its vulnerability to fraud and shall operate a system designed to detect fraud internally by Carrier employees and subcontractors, by providers providing goods or services to FEHB Members, and by individual FEHB Members.

(c) The Carrier shall keep complete records of its quality assurance procedures and fraud program and the results of their implementation and make them available to the Government as determined by OPM. If the Carrier cannot separate FEHB claims from all other claims, the Carrier may report compliance based on all claims and indicate this on the report.

(d) The Contracting Officer may order the correction of a deficiency in the Carrier's quality assurance program or fraud program. The Carrier shall take the necessary action promptly to implement the Contracting Officer's order.

6. Section 1.13, INFORMATION AND MARKETING MATERIALS, is amended to JAN 1997 and amended as follows:

(a) OPM and the Carrier shall agree upon language setting forth the benefits, exclusions and other language of the Plan. OPM, in its sole discretion, may order the Carrier to print and distribute the agreed-upon brochure text, in a format and quantity approved by OPM. This formatted document is referred to as the FEHB brochure. The Carrier shall distribute the FEHB brochure to all Federal employees, annuitants, former spouses and former employees and dependents enrolled in the Plan. The Carrier shall also distribute the document(s) to Federal agencies to be made available to such individuals who are eligible to enroll under this contract. The Carrier may print additional FEHB brochures for distribution or its own use, but only in the approved format and at its own expense.

(b) Supplemental material. Only marketing materials or other supplemental literature prepared in accordance with FEHBAR 1652.203-70 (Section 1.14 of this contract) may be distributed or displayed at or through Federal facilities.

(c) The Carrier shall reflect the statement of benefits in the agreed-upon brochure text included at Appendix A of this contract, verbatim, in the FEHB brochure.

(d) OPM may order the Carrier to prepare an addendum or reissue the FEHB brochure or any piece(s) of supplemental marketing material at no expense to the Government if it does not conform to the agreed-upon brochure text and/or supplemental marketing materials prepared in accordance with FEHBAR 1603.702 and 1652.203-70.

7. Section 1.16, SUBCONTRACTS, is deleted and the section number is reserved.

8. Section 2.5, SUBROGATION, is amended to JAN 1997 and paragraph (b) is amended, as follows:

(b) The Carrier's subrogation procedures and policies shall be shown in

the agreed-upon brochure text.

9. Section 2.8, FILING HEALTH BENEFIT CLAIMS/COURT REVIEW OF DISPUTED CLAIMS, is amended to MAR 1995, the citation (FEHBAR 1652.204-72) added to the heading and the section is amended as follows:

(a) General. (1) The Carrier resolves claims filed under the Plan. All health benefit claims must be submitted initially to the Carrier. If the Carrier denies a claim, (or a portion of a claim), the covered individual may ask the Carrier to reconsider its denial. If the Carrier affirms its denial or fails to respond as required by paragraph (b) of this clause, the covered individual may ask OPM to review the claim. A covered individual must exhaust both the Carrier and OPM review processes specified in this clause before seeking judicial review of the denied claim.

(2) This clause applies to covered individuals and to other individuals or entities who are acting on the behalf of a covered individual and who have the covered individual's specific written consent to pursue payment of the disputed claim.

(b) Time limits for reconsidering a claim. (1) The covered individual has 6 months from the date of the notice to the covered individual that a claim (or a portion of a claim) was denied by the Carrier in which to submit a written request for reconsideration to the Carrier. The time limit for requesting reconsideration may be extended when the covered individual shows that he or she was prevented by circumstances beyond his or her control from making the request within the time limit.

(2) The Carrier has 30 days after the date of receipt of a timely-filed request for reconsideration to:

(i) Affirm the denial in writing to the covered individual;

(ii) Pay the bill or provide the service; or

(iii) Request from the covered individual or provider additional information needed to make a decision on the claim. The Carrier must simultaneously notify the covered individual of the information requested if it requests additional information from a provider. The Carrier has 30 days after the date the information is received to affirm the denial in writing to the covered individual or pay the bill or provide the service. The Carrier must make its decision based on the evidence it has if the covered individual or provider does not respond within 60 days after the date of the Carrier's notice requesting additional information. The Carrier must then send written notice to the covered individual of its decision on the claim. The covered individual may request OPM review as provided in paragraph (b)(3) of this clause if the Carrier fails to act within the time limit set forth in this paragraph.

(3) The covered individual may write to OPM and request that OPM review the Carrier's decision if the Carrier either affirms its denial of a claim or fails to respond to a covered individual's written request for reconsideration within the time limit set forth in paragraph (b)(2) of this clause. The covered individual must submit the request for OPM review within the time limit specified in paragraph (e)(1) of this clause.

(4) The Carrier may extend the time limit for a covered individual's submission of additional information to the Carrier when the covered individual shows he or she was not notified of the time limit or was prevented by circumstances beyond his or her control from submitting the additional information.

(c) Information required to process requests for reconsideration. (1) The

covered individual must put the request to the Carrier to reconsider a claim in writing and give the reasons, in terms of applicable brochure provisions, that the denied claim should have been approved.

(2) If the Carrier needs additional information from the covered individual to make a decision, it must:

(i) Specifically identify the information needed;

(ii) State the reason the information is required to make a decision on the claim;

(iii) Specify the time limit (60 days after the date of the Carrier's request) for submitting the information; and

(iv) State the consequences of failure to respond within the time limit specified, as set out in paragraph (b)(2) of this section.

(d) Carrier determinations. The Carrier must provide written notice to the covered individual of its determination. If the Carrier affirms the initial denial, the notice must inform the covered individual of:

(1) The specific and detailed reasons for the denial;

(2) The covered individual's right to request a review by OPM; and

(3) The requirement that requests for OPM review must be received within 90 days after the date of the Carrier's denial notice and include a copy of the denial notice as well as documents to support the covered individual's position.

(e) OPM review. (1) If the covered individual seeks further review of the denied claim, the covered individual must make a request to OPM to review the Carrier's decision. Such a request to OPM must be made:

(i) Within 90 days after the date of the Carrier's notice to the covered individual that the denial was affirmed; or

(ii) If the Carrier fails to respond to the covered individual as provided in paragraph (b)(2) of this clause, within 120 days after the date of the covered individual's timely request for reconsideration by the Carrier; or

(iii) Within 120 days after the date the Carrier requests additional information from the covered individual, or the date the covered individual is notified that the Carrier is requesting additional information from a provider. OPM may extend the time limit for a covered individual's request for OPM review when the covered individual shows he or she was not notified of the time limit or was prevented by circumstances beyond his or her control from submitting the request for OPM review within the time limit.

(2) In reviewing a claim denied by the Carrier, OPM may

(i) Request that the covered individual submit additional information;

(ii) Obtain an advisory opinion from an independent physician;

(iii) Obtain any other information as may in its judgment be required to make a determination; or

(iv) Make its decision based solely on the information the covered individual provided with his or her request for review.

(3) When OPM requests information from the Carrier, the Carrier must release the information within 30 days after the date of OPM's written request unless a different time limit is specified by OPM in its request.

(4) Within 90 days after receipt of the request for review, OPM will either:

(i) Give a written notice of its decision to the covered individual and the Carrier; or

(ii) Notify the individual of the status of the review. If OPM does not receive requested evidence within 15 days after expiration of the applicable time limit in paragraph (e)(3) of this clause, OPM may make its decision based solely on information available to it at that time and give a written notice of its

decision to the covered individual and to the Carrier.

(f) OPM, upon its own motion, may reopen its review if it receives evidence that was unavailable at the time of its original decision.

(g) Court review. (1) A suit to compel enrollment under § 890.102 of Title 5, Code of Federal Regulations, must be brought against the employing office that made the enrollment decision.

(2) A suit to review the legality of OPM's regulations under this part must be brought against the Office of Personnel Management.

(3) Federal Employees Health Benefits (FEHB) carriers resolve FEHB claims under authority of Federal statute (chapter 89, title 5, United States Code). A covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim. A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the Carrier or the Carrier's subcontractors. The recovery in such a suit shall be limited to a court order directing OPM to require the Carrier to pay the amount of benefits in dispute.

(4) An action under paragraph (3) of this clause to recover on a claim for health benefits:

(i) May not be brought prior to exhaustion of the administrative remedies provided in paragraphs (a) through (f) of this clause;

(ii) May not be brought later than December 31 of the 3rd year after the year in which the care or service was provided; and

(iii) Will be limited to the record that was before OPM when it rendered its decision affirming the Carrier's denial of benefits.

10. Section 3.1, PAYMENTS, is amended to JAN 1989.

11. A new Section 3.6 is added as follows:

SECTION 3.6
DISCREPANCIES BETWEEN ENROLLMENT AND PAYMENTS TO CARRIER (JAN 1997)

(a) The provisions of this section apply only to that portion of subscription payments due the Carrier for the enrolled population beginning Contract Year 1997. That portion of subscription payments due the Carrier for enrollments prior to Contract Year 1997, including claims for equitable adjustment, shall be made in accordance with the contractual provisions of the affected year(s).

(b) Beginning with Contract Year 1997, the OPM and the Carrier recognize that the portion of subscription payments under Section 3.1(a) forwarded by OPM to the Carrier for Enrollees may not be consistent with the Carrier's reconciliation of enrollment under Section 1.5. Therefore, the OPM and the Carrier agree:

(1) That any individual discrepancies discovered in the course of reconciliation, in which the agency certifying officer and the Carrier agree as to the enrollment status of the individual, shall be corrected by the applicable agency to reflect the valid enrollment(s). If the reconciliation indicates that the subscription payments were not made or were made in error, appropriate adjustments shall be made by the agency to the Fund pursuant to law. Any adjustment in the subscription charges received by the Fund from the agency as a result of a reconciliation shall be forwarded by OPM under Section 3.1(a); and

(2) That the rates in Appendix B include an adjustment to the subscription charges equal to one percent in full resolution of all discrepancies not corrected under Section 3.6(b)(1). For

Contract Year 1997, the adjustment shall be included in the subsequent rate reconciliation applicable to the 1997 contract year, rather than an adjustment to the subscription charges.

(c) In consideration of the adjustments in Section 3.6(b)(1) and (2), the Carrier accepts the adjustment to the subscription charges in full resolution of all obligations of the Government in connection with the subscription payments as described in this section 3.6, and waives any rights it may have to claims for subscription payments under Section 3.1(a).

(d) The OPM and the Carrier shall review the reconciliation process and this provision for Contract Year 2001.

12. Section 4.1, ALTERATIONS IN CONTRACT, is amended to APR 1984 and the following phrase is added after the heading:

Portions of this contract are altered as follows:

13. Section 5.1, DEFINITIONS, is amended to OCT 1995.

14. Section 5.14 is amended as follows:

UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS.

(a) It is the policy of the United States that small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals and small business concerns owned and controlled by women shall have the maximum practicable opportunity to participate in performing contracts let by any Federal agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals, and small business concerns owned and controlled by women.

* * * * *

(e) Contractors acting in good faith may rely on written representations by their subcontractors regarding their status as either a small business concern, a small business concern owned and controlled by socially and economically disadvantaged individuals, or a small business concern owned and controlled by women.

15. Section 5.17, CONVICT LABOR, is amended to AUG 1996 and amended as follows:

The Contractor agrees not to employ in the performance of this contract any person undergoing a sentence of imprisonment which has been imposed by any court of a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, or the Trust Territory of the Pacific Islands. This limitation, however, shall not prohibit the employment by the Contractor in the performance of this contract of persons on parole or probation to work at paid employment during the term of their sentence or persons who have been pardoned or who have served their terms. Nor shall it prohibit the employment by the Contractor in the performance of this contract of persons confined for violation

of the laws of any of the States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, or the Trust Territory of the Pacific Islands who are authorized to work at paid employment in the community unaer the laws of such jurisdiction, if-

(a)(1) The worker is paid or is in an approved work training program on a voluntary basis;

(2) Representatives of local union central bodies or similar labor union organizations have been consulted;

(3) Such paid employment will not result in the displacement of employed workers, or be applied in skills, crafts, or trades in which there is a surplus of available gainful labor in the locality, or impair existing contracts for services; and

(4) The rates of pay and other conditions of employment will not be less than those paid or provided for work of a similar nature in the locality in which the work is being performed; and

(b) The Attorney General of the United States has certified that the work-release laws or regulations of the jurisdiction involved are in conformity with the requirements of Executive Order 11755, as amended by Executive Orders 12608 and 12943.

16. Section 5.31, DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES, is amended to NOV 1993.

17. Section 5.32, ADMINISTRATION OF COST ACCOUNTING STANDARDS, is amended to FEB 1995.

18. Section 5.39, COMPETITION IN SUBCONTRACTING, is amended to JAN 1996, the first paragraph is designated (a) and a new paragraph (b) is added, as follows:

(b) If the Contractor is an approved mentor under the Department of Defense Pilot Mentor-Protègè Program (Pub. L. 101-510, section 831 as amended), the Contractor may award subcontracts under this contract on a noncompetitive basis to its protègès.

19. Section 5.47, PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED OR PROPOSED FOR DEBARMENT, is amended to JUL 1995.

20. Section 5.49, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE), is amended to SEP 1996, and paragraphs (c), (e) and (i) are amended by being replaced by paragraphs (c), (d), (f) and (j), as follows. All paragraphs and references to paragraphs are redesignated as necessary and references to paragraphs "above" are revised to read "of this clause" wherever it occurs.

(c) The Contractor shall submit complete termination inventory schedules no later than 120 days from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 120-day period.

(d) After expiration of the plant clearance period as defined in Subpart 45.6 of the Federal Acquisition Regulation, the Contractor may submit to the Contracting Officer a list, certified as to quantity and quality, of termination inventory not previously disposed of, excluding items authorized for disposition by the Contracting Officer. The Contractor may request the Government to remove those items or enter into an agreement for their storage. Within 15 days, the Government will accept title to those items and remove them or enter into a storage agreement. The Contracting Officer may verify the list

upon removal of the items, or if stored, within 45 days from submission of the list, and shall correct the list, as necessary, before final settlement.

* * * * *

(f) Subject to paragraph (e) of this clause, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid or remaining to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (f) or paragraph (g) of this clause, exclusive of costs shown in subparagraph (g)(3) of this clause, may not exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the contract price of work not terminated. The contract shall be modified, and the Contractor paid the agreed amount. Paragraph (g) of this clause shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

* * * * *

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (d), (f), or (k) of this clause, except that if the Contractor failed to submit the termination settlement proposal or request for equitable adjustment within the time provided in paragraph (d) or (k), respectively, and failed to request a time extension, there is no right of appeal.

21. Section 5.52, REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS OTHER THAN PENSIONS (PRB), is amended to MAR 1996.

22. The following FAR clauses are added:

SECTION 5.55
EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (JAN 1988) (FAR 52.222-37)

(a) The contractor shall report at least annually, as required by the Secretary of Labor, on:

(1) The number of special disabled veterans and the number of veterans of the Vietnam era in the workforce of the contractor by job category and hiring location; and

(2) The total number of new employees hired during the period covered by the report, and of that total, the number of special disabled veterans and the number of veterans of the Vietnam era.

(b) The above items shall be reported by completing the form entitled "Federal Contractor Veterans' Employment Report VETS-100."

(c) Reports shall be submitted no later than March 31 of each year beginning March 31, 1988.

(d) The employment activity report required by paragraph (a)(2) of this clause shall reflect total hires during the most recent 12-month period as of the ending date selected for the employment profile report required by paragraph (a)(1) of this clause. Contractors may select an ending date: (1) As of the end of any pay period during the period January through March 1st of the year the report is due, or (2) as of December 31, if the contractor has previous written approval from the Equal Employment Opportunity Commission to do so for purposes of submitting the Employer Information Report EEO-1 (Standard Form 100).

(e) The count of veterans reported according to paragraph (a) of this clause

shall be based on voluntary disclosure. Each contractor subject to the reporting requirements at 38 U.S.C. 2012(d) shall invite all special disabled veterans and veterans of the Vietnam era who wish to benefit under the affirmative action program at 38 U.S.C. 2012 to identify themselves to the contractor. The invitation shall state that the information is voluntarily provided, that the information will be kept confidential, that disclosure or refusal to provide the information will not subject the applicant or employee to any adverse treatment and that the information will be used only in accordance with the regulations promulgated at 38 U.S.C. 2012.

(f) *Subcontracts.* The Contractor shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary.

SECTION 5.56
AUTHORIZATION AND CONSENT (APR 1984) (FAR 52.227-1)

(a) The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

(b) The Contractor agrees to include, and require inclusion of, this clause, suitably modified to identify the parties, in all subcontracts at any tier for supplies or services (including construction, architect-engineer services, and materials, supplies, models, samples, and design or testing services expected to exceed $25,000); however, omission of this clause from any subcontract, under or over $25,000, does not affect this authorization and consent.

SECTION 5.57
NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (APR 1984) (FAR 52.227-2)

(a) The Contractor shall report to the Contracting Officer, promptly and in reasonable written detail, each notice or claim of patent or copyright infringement based on the performance of this contract of which the contractor has knowledge.

(b) In the event of any claim or suit against the Government on account of any alleged patent or copyright infringement arising out of the performance of this contract or out of the use of any supplies furnished or work or services performed under this contract, the Contractor shall furnish to the Government, when requested by the Contracting Officer, all evidence and information in possession of the Contractor pertaining to such suit or claim. Such evidence and information shall be furnished at the expense of the Government except where the Contractor has agreed to indemnify the Government.

(c) The Contractor agrees to

include, and require inclusion of, this clause, in all subcontracts at any tier for supplies or services (including construction and architect-engineer subcontracts and those for materials, supplies, models, samples, or design or testing services) expected to exceed the simplified acquisition threshold at FAR 2.101.

SECTION 5.58
MANDATORY INFORMATION FOR ELECTRONIC FUNDS TRANSFER PAYMENT (AUG 1996)

(a) *Method of payment.* Payments by the Government under this contract, including invoice and contract financing payments, may be made by check or electronic funds transfer (EFT) at the option of the Government. If payment is made by EFT, the Government may, at its option, also forward the associated payment information by electronic transfer. As used in this clause, the term "EFT" refers to the funds transfer and may also include the information transfer.

(b) *Mandatory submission of Contractor's EFT information.* (1) The Contractor is required, as a condition to any payment under this contract, to provide the Government with the information required to make payment by EFT as described in paragraph (d) of this clause, unless the payment office determines that submission of the information is not required. However, until January 1, 1999, in the event the Government certifies in writing to the payment office that the Contractor does not have an account with a financial institution or an authorized payment agent, payment shall be made by other than EFT. For any payments to be made after January 1, 1999, the Contractor shall provide EFT information as described in paragraph (d) of this clause.

(2) If the Contractor provides EFT information applicable to multiple contracts, the Contractor shall specifically state the applicability of this EFT information in terms acceptable to the payment office.

(c) *Contractor's EFT information.* Prior to submission of the first request for payment (whether for invoice or contract financing payment) under this contract, the Contractor shall provide the information required to make payment by EFT, as described in paragraph (d) of this clause, directly to the Government payment office named in this contract. If more than one payment office is named for the contract, the Contractor shall provide a separate notice to each office. In the event that the EFT information changes, the Contractor shall be responsible for providing the changed information to the designated payment office(s).

(d) *Required EFT information.* The Government may make payment by EFT through either an Automated Clearing House (ACH) subject to the banking laws of the United States or the Federal Reserve Wire Transfer System at the Government's option. The Contractor shall provide the following information for both methods in a form acceptable to the designated payment office. The Contractor may supply this data for this or multiple contracts (see paragraph (b) of this clause).

(1) The contract number to which this notice applies.

(2) The Contractor's name and remittance address, as stated in the contract, and account number at the Contractor's financial agent.

(3) The signature (manual or electronic, as appropriate), title, and telephone number of the Contractor official authorized to provide this information.

(4) For ACH payments only:

(i) Name, address, and 9-digit Routing Transit Number of the

Contractor's financial agent.

(ii) Contractor's account number and the type of account (checking, saving, or lockbox).

(5) For Federal Reserve Wire Transfer System payments only:

(i) Name, address, telegraphic abbreviation, and the 9-digit Routing Transit Number for the Contractor's financial agent.

(ii) If the Contractor's financial agent is not directly on-line to the Federal Reserve Wire Transfer System and, therefore, not the receiver of the wire transfer payment, the Contractor shall also provide the name, address, and 9-digit Routing Transit Number of the correspondent financial institution receiving the wire transfer payment.

(e) *Suspension of payment.* (1) Notwithstanding the provisions of any other clause of this contract, the Government is not required to make any payment under this contract until after receipt, by the designated payment office, of the correct EFT payment information from the Contractor or a certificate submitted in accordance with paragraph (b) of this clause. Until receipt of the correct EFT information, any invoice or contract financing request shall be deemed not to be a valid invoice or contract financing request as defined in the Prompt Payment clause of this contract.

(2) If the EFT information changes after submission of correct EFT information, the Government shall begin using the changed EFT information no later than the 30th day after its receipt to the extent payment is made by EFT. However, the Contractor may request that no further payments be made until the changed EFT information is implemented by the payment office. If such suspension would result in a late payment under the Prompt Payment clause of this contract, the Contractor's request for suspension shall extend the due date for payment by the number of days of the suspension.

(f) *Contractor EFT arrangements.* The Contractor shall designate a single financial agent capable of receiving and processing the electronic funds transfer using the EFT methods described in paragraph (d) of this clause. The Contractor shall pay all fees and charges for receipt and processing of transfers.

(g) *Liability for uncompleted or erroneous transfers.* (1) If an uncompleted or erroneous transfer occurs because the Government failed to use the Contractor-provided EFT information in the correct manner, the Government remains responsible for (i) making a correct payment, (ii) paying any prompt payment penalty due, and (iii) recovering any erroneously directed funds.

(2) If an uncompleted or erroneous transfer occurs because Contractor-provided EFT information was incorrect at the time of Government release of the EFT payment transaction instruction to the Federal Reserve System, and-

(i) If the funds are no longer under the control of the payment office, the Government is deemed to have made payment and the Contractor is responsible for recovery of any erroneously directed funds; or

(ii) If the funds remain under the control of the payment office, the Government retains the right to either make payment by mail or suspend the payment in accordance with paragraph (e) of this clause.

(h) *EFT and prompt payment.* (1) A payment shall be deemed to have been made in a timely manner in accordance with the Prompt Payment clause of this contract if, in the EFT payment transaction instruction given to the Federal Reserve System, the date specified for settlement of the payment is on or before the prompt payment due date, provided the specific payment date

is a valid date under the rules of the Federal Reserve System.

(2) When payment cannot be made by EFT because of incorrect EFT information provided by the Contractor, no interest penalty is due after the date of the uncompleted or erroneous payment transaction, provided that notice of the defective EFT information is issued to the Contractor within 7 days after the Government is notified of the defective EFT information.

(i) *EFT and assignment of claims.* If the Contractor assigns the proceeds of this contract as provided for in the Assignment of Claims clause of this contract, the assignee shall provide the assignee EFT information required by paragraph (d) of this clause. In all respects, the requirements of this clause shall apply to the assignee as if it were the Contractor. EFT information which shows the ultimate recipient of the transfer to be other than the Contractor, in the absence of a proper assignment of claims acceptable to the Government, is incorrect EFT information within the meaning of paragraph (e) of this clause.

(j) *Payment office discretion.* If the Contractor does not wish to receive payment by EFT methods for one or more payments, the Contractor may submit a request to the designated payment office to refrain from requiring EFT information or using the EFT payment method. The decision to grant the request is solely that of the Government.

(k) *Change of EFT information by financial agent.* The Contractor agrees that the Contractor's financial agent may notify the Government of a change to the routing transfer number, Contractor account number, or account type. The Government shall use the changed data in accordance with paragraph (e)(2) of this clause. The Contractor agrees that the information provided by the agent is deemed to be correct information as if it were provided by the Contractor. The Contractor agrees that the agent's notice of changed EFT data is deemed to be a request by the Contractor in accordance with paragraph (e)(2) that no further payments be made until the changed EFT information is implemented by the payment office.

SECTION 5.59
CERTIFICATION OF NONSEGREGATED FACILITIES (APR 1984) (FAR 52.222-21)

(a) "Segregated Facilities," as used in this provision, means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees, that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin because of habit, local custom, or otherwise.

(b) The contractor certifies that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. The contractor agrees that a breach of this certification is a violation of the Equal Opportunity clause in the contract.

(c) The contractor further agrees that (except where it has obtained identical certifications from proposed subcontractors for specific time periods) it will-

(1) Obtain identical certifications from proposed subcontractors before the award of subcontracts under which the subcontractor will be subject to the Equal Opportunity clause;

(2) Retain the certifications in the files; and

(3) Forward the following notice to the proposed subcontractor (except if the proposed subcontractors have submitted identical certifications for specific time periods):

NOTICE TO PROSPECTIVE SUBCONTRACTORS OR REQUIREMENT FOR CERTIFICATIONS OF NONSEGREGATED FACILITIES.

A Certification of Nonsegregated Facilities must be submitted before the award of a subcontract under which the subcontractor will be subject to the Equal Opportunity clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semiannually, or annually).

NOTE: The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.

23. Appendix A is the 1997 FEHB brochure.

24. Appendix B is the schedule of biweekly subscription charges for 1997.

25. Appendix C is Contract Administration Data.

26. Appendix E is amended by replacing the existing National Association of Insurance Commissioners Order of Benefit Determination Rules with the following updated Appendix E.

# Appendix A

I agree that this brochure text contains the 1997 benefits, exclusions and other brochure language agreed to by the Carrier and the Office of Personnel Management under Contract Number CS 1929 of the Federal Employees Health Benefits Program.

For the Carrier

Henry D. Eckert 9/19/96

Signature of Contracting Official Date

Henry D. Eckert, Ass. Ex. Director

Typed or printed name and title

Scott and White Health Plan

Name of contracting entity (with d.b.a., if applicable)

For the Office of Personnel Management

David A. Lewis 11/15/96

Signature of Contracting Officer Date

David A. Lewis, Chief
Insurance Contracts Division IV
Contracting Officer

# CONTRACT FOR FEDERAL EMPLOYEES HEALTH BENEFITS

CONTRACT NO: CS 1929
EFFECTIVE: 01-01-1983

AMENDMENT NO: 1998
EFFECTIVE: 01-01-1998

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
hereinafter called the OPM, the Agency or the Government

AND

CONTRACTOR: Scott and White Health Plan
hereinafter also called the Carrier.

Address:

SCOTT AND WHITE HEALTH PLAN
2401 S 31ST ST
TEMPLE, TX 76508-3000

In consideration of payment by the Agency of subscription charges set forth in Appendix B, the Carrier agrees to perform all of the services set forth in this contract, including Appendix A.

FOR THE CARRIER

Deny Radefeld
Name of Signer (Typed or Printed)

Executive Director
Title of Signer

Deny Radefeld
Signature of Person Authorized to Execute Contract

9/10/97
Date Signed

FOR THE GOVERNMENT

David A. Lewis
Name of Contracting Officer

Chief, Insurance Contracts Division IV
Title of Contracting Officer

David A. Lewis
Signature of Contracting Officer

9/29/97
Date Signed

**1998 Amendments**
**Community-Rated HMOs**

1. All references to the 1997 contract year are changed to 1998.

2. On the first page of the contract, the contractor's signature lines are revised to make it clear that the signer is the person authorized to execute the contract. Superfluous language on the page deleted.

3. The Table of Contents is amended to incorporate technical and editorial changes, to add regulatory clauses effective for the 1998 contract year, to delete obsolete FAR clauses, and to replace four (4) FAR clauses with FEHB-specific clauses, as follows:

1.19 CERTIFICATION UNDER P.L. 104-191 (HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996)

2.13 BENEFITS PAYMENTS WHEN MEDICARE IS PRIMARY

5.9 [RESERVED]
5.11 [RESERVED]

5.29 [RESERVED]

5.38 CHANGES--NEGOTIATED BENEFITS CONTRACTS
5.39 [RESERVED]

5.40 GOVERNMENT PROPERTY (NEGOTIATED BENEFITS CONTRACTS)
5.46 [RESERVED]
5.49 FEHBP TERMINATION FOR CONVENIENCE OF THE GOVERNMENT--NEGOTIATED BENEFITS CONTRACTS

5.50 FEHBP TERMINATION FOR DEFAULT--NEGOTIATED BENEFITS CONTRACTS
5.52 [RESERVED]

Appendix D-a JANUARY 1998

4. Section 1.4, INCORPORATION OF LAWS AND REGULATIONS, is redated JAN 1998 and the reference to the FAR clause has been replaced with an FEHB-specific clause reference in the contract, as follows:

(b) If the Regulations are changed in a manner which would increase the Carrier's liability under this contract, the change will be made effective for the contract period subsequent to the period in which the change is promulgated and, if the change is promulgated in November or December, the change will not be effective until the second contract year following the year in which the change is promulgated; unless (i) The Carrier agrees to an earlier date or (ii) the change is ordered by the Contracting Officer pursuant to the *Changes--Negotiated Benefits Contracts* clause of the contract.

5. Section 1.7, STATISTICS AND SPECIAL STUDIES, is redated JAN 1998 and a new last paragraph is added so that the carrier will know its responsibility to OPM with respect to a change in contract administrator:

(d) The Carrier shall notify the OPM Contract Representative immediately upon a change in the name or address of the Carrier's contract administrator(s).

6. Section 1.9, FEHB QUALITY ASSURANCE, is redated JAN 1998 and amended to allow more flexibility in data collection and the pursuit of fraud and abuse, and to delete references to contract year 1997, as follows:

(8) Assessing Quality of Health Care. The Carrier shall collect data on the measures endorsed by the Foundation for Accountability (FACCT), as requested by the OPM for services rendered through the Carrier's Preferred Provider Organization and/or Point of Service networks. Further, the Carrier shall provide statistical reports in accordance with FACCT guidelines when requested by OPM. The Carrier may be asked to collect data on one or more measures in a specified geographic locality. In addition, the Carrier shall report on measures developed by the National Committee for Quality Assurance as directed by OPM.

(b) The Carrier shall conduct a program to assess its vulnerability to fraud and abuse and shall operate a system designed to detect and eliminate fraud and abuse internally by Carrier employees and subcontractors, by providers providing goods or services to FEHB Members, and by individual FEHB Members.

7. A new Section 1.19, CERTIFICATION UNDER P.L. 104-191 (HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996), is added to require the carrier to certify coverage for enrollees under the Health Insurance Portability and Accountability Act of 1996, P.L. 104-191, as follows:

CERTIFICATION UNDER P.L. 104-191 (HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996) (JAN 1998)

The Carrier shall issue a certification of coverage for enrollees in accordance with regulations issued by the Health Care Finance Administration.

8. Section 2.1, ENROLLMENT ELIGIBILITY AND EVIDENCE OF ENROLLMENT, is redated JAN 1998 and amended to delete the reference to enrollment area, as follows:

(b) The Carrier shall, subject to the approval of the Contracting Officer, define an area from which it will accept enrollments. The Carrier may limit enrollment to individuals residing or employed inside the approved area.

9. Section 2.5, SUBROGATION, is redated JAN 1998 and amended by adding language permitting the carrier to either show its subrogation procedures in the brochure text or provide them upon request, as follows:

(b) The Carrier's subrogation procedures and policies shall be shown in the agreed-upon brochure text or made available to the enrollees upon request.

10. Section 2.11, CLAIMS PROCESSING, is redated JAN 1998 and amended to delete inapplicable and obsolete language, as follows: